UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ASCOTT RESOURCES LLC, <br><br> Defendant. | Civil Action No.: 5:23-cv-00762 |

## COMPLAINT

Plaintiff, Starr Indemnity & Liability Company ("Plaintiff" or "Starr Indemnity"), by way of Complaint against Defendant Ascott Resources LLC says:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff Starr Indemnity is a property and casualty insurance company incorporated in the State of Texas.

2. Starr Indemnity maintains its main administrative office at 399 Park Avenue, New York, New York.

3. Starr Indemnity is authorized to do business, and does business, in the State of West Virginia.

4. For diversity purposes, Starr Indemnity is a citizen of Texas and New York.

5. Ascott Resources LLC ("Defendant") is a limited liability company duly organized and existing under the laws of the State of West Virginia.

6. Defendant maintains its headquarters and principal place of business at 605 Club Circle, Daniels, West Virginia.

132322412.1

7. Upon information and belief, the sole member of Defendant is Jerry Scott II.

8. Upon information and belief, Jerry Scott II is a citizen of the state of West Virginia.

9. For diversity purpose, Defendant is a citizen of West Virginia.

10. The amount in controversy between the parties is in excess of Seventy-Five Thousand Dollars ($75,000.00).

11. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

12. At the specific request of Defendant, Starr Indemnity issued a workers' compensation and employers' liability insurance policy, under policy number 100 0004956, that covered the term April 1, 2022 to April 1, 2023 (the "2022 WC Policy").

13. At the specific request of Defendant, the 2022 WC Policy renewed for the term April 1, 2023 to April 1, 2024 (the "2023 WC Policy").

14. At the specific request of Defendant, Starr Indemnity issued a deductible liability protection policy, under policy number 1000090767231, that covered the term April 1, 2023 to April 1, 2024 (the "2023 DLP Policy").

15. The 2022 WC Policy, 2023 WC Policy, and 2023 DLP Policy are insurance contracts which provide insurance coverage for certain liabilities of Defendant as set forth therein in exchange for payment of premiums.

### *The 2022 WC Policy*

16. Throughout the 2022 WC policy term, Starr Indemnity provided Defendant with the insurance protection set for in the 2022 WC Policy.

17. Defendant received and accepted the insurance coverage of the 2022 WC Policy.

18. The 2022 WC Policy states that the "premium for this policy will be determined by our Manuals of Rules, Classifications, Rates, and Rating Plans."

19. Various state laws under which workers' compensation claims may be asserted against the 2022 WC Policy require Starr Indemnity to impose taxes and surcharges on policies of workers' compensation insurance.

20. Pursuant to the terms of the 2022 WC Policy, the initial premium was based on information submitted by Defendant and/or its insurance broker regarding Defendant's estimated remuneration for the effective dates of coverage.

21. Since the initial premium is based on estimated information, the Policy is subject to audit to determine the actual remuneration during the effective dates of coverage.

22. The audit can result in additional or return premiums.

23. The 2022 WC Policy specifically provides as follows:

> The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not estimated premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance, if it is less, we will refund the balance to you.

24. The Audit Noncompliance Charge Endorsement attached to the 2022 WC Policy states that, in the event of Defendant's noncompliance with Starr Indemnity's audit of the 2022 WC Policy, Starr Indemnity would be permitted to charge Defendant a multiple of two times the amount due.

25. Starr Indemnity attempted to perform an audit of Defendant's books and records as they related to the 2022 WC Policy.

26. Defendant wholly failed to cooperate with Starr Indemnity in the audit process.

27. Defendant failed to provide the books and records necessary for Starr Indemnity to complete the audit.

28. The sum total of premiums and surcharges, including the audit premiums, and the audit noncompliance charge, for the 2022 WC Policy is three million, eighteen thousand, six-hundred and thirty-four dollars ($3,018,634.00).

29. Defendant remitted one million, fourteen thousand, four-hundred and eighty-four dollars ($1,014,484.00) for premiums and surcharges for the 2022 WC Policy.

30. Defendant, therefore, remains indebted to Plaintiff in the amount of two million, four thousand, one hundred and fifty dollars ($2,004,150.00).

31. Starr Indemnity issued invoices and demands for payment for the outstanding premium to Defendant in a timely fashion.

32. Defendant has failed, refused, and continues to refuse to remit payment of the $2,004,150.00 owed to Starr Indemnity pursuant to the terms of the 2022 WC Policy.

33. Starr Indemnity has been damaged in the amount of $2,004,150.00.

### *The 2023 WC Policy*

34. The 2023 WC Policy was cancelled, effective June 6, 2023, due to Defendant's failure to pay the estimated premium due at policy inception.

35. Throughout the 2023 WC policy term (*i.e.*, April 1, 2023 to June 6, 2023), Starr Indemnity provided Defendant with the insurance protection set forth in the 2023 WC Policy.

36. Defendant received and accepted the insurance coverage of the 2023 WC Policy.

37. The 2023 WC Policy states that the "premium for this policy will be determined by our Manuals of Rules, Classifications, Rates, and Rating Plans."

38. Various state laws under which workers' compensation claims may be asserted against the 2023 WC Policy require Starr Indemnity to impose taxes and surcharges on policies of workers' compensation insurance.

39. Pursuant to the terms of the 2023 WC Policy, the initial premium was based on information submitted by Defendant and/or its insurance broker regarding Defendant's estimated remuneration for the effective dates of coverage.

40. Since the initial premium is based on estimated information, the Policy is subject to audit to determine the actual remuneration during the effective dates of coverage.

41. The audit can result in additional or return premiums.

42. The 2023 WC Policy specifically provides as follows:

> The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not estimated premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance, if it is less, we will refund the balance to you.

43. The Audit Noncompliance Charge Endorsement attached to the 2023 WC Policy states that, in the event of Defendant's noncompliance with Starr Indemnity's audit of the 2023 WC Policy, Starr Indemnity would be permitted to charge Defendant a multiple of two times the amount due.

44. Starr Indemnity attempted to perform an audit of Defendant's books and records as they related to the 2023 WC Policy.

45. Defendant wholly failed to cooperate with Starr Indemnity in the audit process.

46. Defendant failed to provide the books and records necessary for Starr Indemnity to complete the audit.

47. The sum total of premiums and surcharges, including the audit premiums, and the audit noncompliance charge, for the 2023 WC Policy is nine hundred forty-eight thousand, two hundred and seventy dollars ($948,270.00).

48. Defendant did not pay any of the premiums and surcharges for the 2023 WC Policy.

49. Defendant, therefore, remains indebted to Plaintiff in the amount of $948,270.00.

50. Starr Indemnity issued invoices and demands for payment for the outstanding premium to Defendant in a timely fashion.

51. Defendant has failed, refused, and continues to refuse to remit payment of the $948,270.00 owed to Starr Indemnity pursuant to the terms of the 2023 WC Policy.

52. Starr Indemnity has been damaged in the amount of $948,270.00.

### *The 2023 DLP Policy*

53. The 2023 DLP Policy was cancelled, effective June 6, 2023, due to Defendant's failure to pay the estimated premium due at policy inception.

54. Throughout the 2023 DLP policy term (*i.e.*, April 1, 2023 to June 6, 2023), Starr Indemnity provided Defendant with the insurance protection set for in the 2023 DLP Policy.

55. Defendant received and accepted the insurance coverage of the 2023 DLP Policy.

56. The pro-rated sum total of premiums and surcharges for the 2023 DLP Policy is ninety-three thousand, eight hundred seventy dollars and sixty-four cents ($93,870.64).

57. Defendant did not pay any of the premiums and surcharges for the 2023 WC Policy.

58. Defendant, therefore, remains indebted to Plaintiff in the amount of $93,870.64.

59. Starr Indemnity issued invoices and demands for payment for the outstanding premium to Defendant in a timely fashion.

60. Defendant has failed, refused, and continues to refuse to remit payment of the $93,870.64 owed to Starr Indemnity pursuant to the terms of the 2023 DLP Policy.

61. Starr Indemnity has been damaged in the amount of $93,870.64.

## COUNT ONE
*Breach of Contract*

62. Plaintiff incorporates by reference paragraphs 1 through 61, as if fully set forth herein.

63. Starr Indemnity, on numerous occasions prior to filing the instant litigation, demanded payment of the three million, forty-six thousand, two hundred ninety dollars and sixty-four cents ($3,046,290.64) owed by Defendant.

64. Defendant has failed and refused to pay the amounts due under the 2022 WC Policy, the 2023 WC Policy, and the 2023 DLP Policy.

65. Through its failure to reimburse Starr Indemnity, Defendant has breached the insurance contracts between the parties.

66. By reason of the foregoing, Starr Indemnity has sustained damages of $3,046,290.64, plus interest, and costs.

**WHEREFORE**, Starr Indemnity demands judgment against Defendant in the amount of $3,046,290.64 for compensatory damages, together with costs of suit, interest, and such other relief as this Court deems just and proper.

## COUNT TWO
*Unjust Enrichment*

67. Plaintiff incorporates by reference paragraphs 1 through 66, as if fully set forth herein.

68. Starr Indemnity provided insurance coverage and related services to Defendant for which Defendant has refused to pay.

69. Defendant, through its refusal to pay for the insurance coverage and related services, has been unjustly enriched at Starr Indemnity's detriment.

70. Defendant has failed, refused, and continues to refuse to pay the balance due and owing to Starr Indemnity, thereby resulting in damages to Starr Indemnity in the amount of $3,046,290.64, plus interest, and costs.

**WHEREFORE**, Starr Indemnity demands judgment against Defendant in the amount of $3,046,290.64 for compensatory damages, together with costs of suit, interest, and such other relief as this Court deems just and proper.

                                        **STARR INDEMNITY & LIABILITY COMPANY**
                                        By Counsel:

                                        */s/Matthew A. Nelson*
                                        Matthew A. Nelson, Esq. (WVSB 9421)
                                        Russell A. Williams Esq. (WVSB 12710)
                                        Lewis Brisbois Bisgaard & Smith LLP
                                        707 Virginia Street, E., Ste. 1400
                                        Charleston, WV   25301
                                        304.553.0129/304.932.0265 (f)
                                        matt.nelson@lewisbrisbois.com
                                        russell.williams@lewisbrisbois.com